**UNIVERSAL C. I. T. CREDIT CORPORA-TION, Plaintiff Below, Appellant,**

**v.**

**Kenneth F. WILLIAMS, Earl Floyd, Highway Motors, Inc., Morgan Leasing Co., Inc., Harry Morgan and Harry Morgan, Jr., Defendants Below, Appellees.**

Supreme Court of Delaware.

June 28, 1966.

Courtney H. Cummings, Jr., of Killoran & Van Brunt, Wilmington, for plaintiff below, appellant.

Raymond L. Becker, Wilmington, for Earl Floyd, defendant below, appellee.

William S. Hudson, Dover, for Morgan Leasing Co., Inc., defendant below, appellee.

CAREY and HERRMANN, Justices, and WRIGHT, Judge, sitting.

HERRMANN, Justice:

This appeal involves the validity of security interests in an automobile asserted by the plaintiff under the Delaware Trust Receipts Act (6 Del.C. Chap. 11)[1] and the Motor Vehicle Lien Statutes (21 Del.C. § 2331, et seq. and 25 Del.C. § 2305).[2]

The following are the dispositive facts:

A new Lincoln automobile was purchased by Fader Motor Company (hereinafter "Fader") from another automobile dealer on or about January 4, 1963. Prior thereto, a Floor Plan Agreement had been entered into by Fader with the plaintiff, Universal C.I.T. Credit Corporation. In connection therewith, a Statement of Trust Receipt Financing was filed with the Secretary of State in compliance with the Trust Receipts Act, 6 Del.C. § 1113. The plaintiff advanced to Fader under the Floor Plan Agreement the full purchase price of the Lincoln; a trust‑receipt covering the transaction was made out; but it was not signed by either party. Fader also executed and delivered to the plaintiff a chattel mortgage covering the automobile. The mortgage was recorded in the Office of the Recorder of Deeds but was not noted and recorded in the manner required by 21 Del.C. § 2331 et seq. and 25 Del.C. § 2305 for the recording of liens against motor vehicles.

Until September 1963, although for sale, the Lincoln was used as a demonstrator and by executives of Fader. On October 2, 1963, title was transferred to the defendant Kenneth F. Williams, vice president and manager of Fader. Shortly thereafter Fader went into receivership. On November 29, 1963, Williams conveyed title to the defendant Earl Floyd. The title certificate delivered to Floyd by Williams showed a pre-existing lien in favor of a bank in the amount of $2,996.50, the lien being paid and satisfied at the time of the conveyance to Floyd. The title certificate disclosed no security interest in favor of the plaintiff. Floyd was a used car dealer, who had been a former business partner of Williams and who had dealt with Williams and Fader on many occasions in the trading of used automobiles. Although Floyd knew that the Lincoln originally belonged to Fader, he was told by Williams at the time of the conveyance that Williams had bought the automobile and then owned it, all being consistent with Floyd's having seen the Lincoln being driven by Mrs. Williams and parked in front of the Williams residence. Although Floyd knew that Fader's automobile inventory was financed, there is no evidence that he knew, or should have known, that it was floor planned by the plaintiff generally, or that the Lincoln automobile was covered by such floor plan specifically. There is no evidence that Floyd knew, or should have known, that Williams' title was subject to any security interest of the plaintiff; indeed, all of the evidence is to the contrary. Floyd conveyed three used automobiles, evaluated at approximately $4,000., to Williams in exchange for the Lincoln which was similarly evaluated. Shortly thereafter, Floyd sold the Lincoln to the defendant Morgan Leasing Co., Inc. (hereinafter "Morgan") for cash and another automobile, title passing on January 3,

---

1. Taken from the Uniform Trust Receipts Act. See 9C U.L.A. 220.

2. 21 Del.C. § 2331 et seq. prescribes the procedures for registering with the Motor Vehicle Department liens and encumbrances on automobiles and the recording thereof on certificates of title. It is provided by § 2335 that liens and encumbrances "entered upon the certificate of title and recorded in the lien register [of the Motor Vehicle Department] shall be notice to all creditors, of whatever description, that such liens or encumbrances exist against the motor vehicle"; and 25 Del.C. § 2305, dealing with chattel mortgages generally, provides that the filing of a chattel mortgage against a motor vehicle titled in this State shall not constitute notice of a lien against the vehicle, "as to the State, or creditors or purchasers unless and until a statement of such lien is noted and recorded in the manner required by law for the recording of liens against motor vehicles."

1964. The plaintiff's security interest nowhere appeared on the certificate of title delivered to Morgan and there was no evidence that Morgan had knowledge of the prior history of the car.

The plaintiff brought this replevin action on December 24, 1963, seeking to repossess the Lincoln. The plaintiff asserted valid security interests under the trust receipt and the chattel mortgage. Floyd defended on the ground, *inter alia,* that he was a bona fide purchaser for value without notice; Williams failed to appear and a default judgment was taken against him; and general defenses were interposed by the other defendants. The case was tried without a jury; the Superior Court held for the defendant Floyd; and the plaintiff appeals.

The Superior Court held that a trust receipt security interest did not arise here because Fader took title directly from another automobile dealer in a bi-partite transaction, rather than in a tri-partite transaction involving the plaintiff. The court below also held, as a ground for concluding that a trust receipt security interest did not come into being, that a demonstrator or "executive car" may not be the subject of a trust receipt transaction. On the appeal, in addition to the grounds upon which the Superior Court put its decision, the defendants contend that a trust receipt security interest did not arise because the trust receipt was unsigned.

We find it unnecessary to decide these questions. Assuming that the plaintiff held a trust receipt security interest, we are of the opinion that it was not an interest valid as to the defendant Floyd and his assignee Morgan. The evidence impels the conclusion, we think, that Floyd was a bona fide purchaser for value without notice of the plaintiff's trust receipt security interest. Indeed, there is no evidence to the contrary.

■ Since the plaintiff clothed Fader with the indicia of ownership, and thereby enabled Fader and its agents to deal with third parties relying on such apparent ownership, the rights of third parties, acquired for value and without notice, must prevail over the rights of the plaintiff. 53 Am. Jur. "Trust Receipts" § 8; Anno. 168 A.L.R. 359, 368, et seq. Although it ·is reasonable to infer from the evidence that Floyd knew, or should have known, generally that Fader's inventory of automobiles was financed by floor plan or otherwise, such general knowledge is insufficient to expose a bona fide purchaser for value to an entruster's security interest. Actual knowledge as to the automobile in question is required to deprive a bona fide purchaser for value of protection against the entruster's security interest. See General Motors Acceptance Corporation v. Anacone, 160 Me. 53, 197 A.2d 506 (1964). There being no evidence upon the basis of which bad faith or inadequacy of value may be found as to Floyd, we conclude that he took title free of any trust receipt security interest the plaintiff may have had.

Turning to the chattel mortgage, the plaintiff concedes that its security interest thereunder is ineffective as to a bona fide purchaser for value without notice. In view of our conclusion that the evidence shows Floyd to have been a bona fide purchaser for value, and since there is no evidence that he had actual notice of the chattel mortgage, we hold that the plaintiff has no valid security interest under the chattel mortgage as to Floyd.

■ We are aware that, although expressly requested by the plaintiff to do so, the trial court considered it unnecessary, in the view it took of the case, to rule upon Floyd's status as a bona fide purchaser for value without notice. In this non-jury case, it is within the scope of our review to examine the record and reach our own conclusion on this issue, rather than remand for the purpose. See Nardo v. Nardo, Del., 209 A.2d 905, 911 (1965). This we have done, with the foregoing result.

The judgment below is affirmed.